In the Matter of the Application of JAMES J. SMITH, Petitioner, for a Certiorari Order against JOSEPH A. WARREN, as Police Commissioner of the City of New York, Respondent.

First Department, April 5, 1929.

*Sol. H. Eisler* of counsel [*Patrick J. Walsh,* attorney], for the petitioner.

*Vine H. Smith* of counsel [*J. Joseph Lilly* with him on the brief; *George P. Nicholson, Corporation Counsel,* attorney], for the respondent.

MARTIN, J. The petitioner, by an order of certiorari granted on September 6, 1927, upon his petition, seeks to annul the determina-

tion of the police commissioner finding him guilty of conduct prejudicial to good order, efficiency and discipline; conduct unbecoming an officer; neglect of duty and violation of the rules. The commissioner imposed as a punishment the forfeiture of thirty days' pay.

On May 20, 1926, in the Thirty-fifth precinct where petitioner was on duty as a police sergeant, several trucks carrying liquor were intercepted by police officers. The alleged owners of the trucks were at once notified by some unknown person and soon arrived on the scene. After a talk with several of the police officers, the trucks were permitted to continue on their journey and no report of the occurrence was made to any superior officer except the petitioner, and it was not recorded in the blotter or records of the department.

Rule 64 of the Rules and Regulations of the Police Department requires sergeants while on duty to exact proper performance of patrol and other police duty by the members of the force under their supervision. Rule 145 requires each member of the force to enter in his memorandum book a full and accurate record of the duty performed by him and all police occurrences on his post. Rule 187 requires that each violation of the rules and other dereliction of police duty be reported to the commanding officer.

At about four-twenty-five o'clock A. M. on May 20, 1926, Patrolman Alloggio, then on post at booth 13, which was at the southwest corner of Newkirk and Nostrand avenues, Brooklyn, received a telephone call from the station house directing him to proceed to No. 2537 Bedford avenue, it having been reported that there was a disorderly person there. The petitioner admitted he was on signal monitor duty at the station house and that he sent this call.

Alloggio, on receiving the above information, proceeded at once to the number indicated. On the way he met Patrolman Wagstaff of the same precinct who was in a Ford car of the police department. Wagstaff had already visited the point of the reported disturbance, having heard the call to Alloggio' while telephoning the police station from a different booth. Wagstaff and Alloggio proceeded in the car to the number indicated and reached there within four or five minutes but found nothing unusual. Upon inquiry two men from a garage across the street informed them there had not been any disturbance in the neighborhood during the entire night.

Alloggio reported back to the station house at four-fifty or four-fifty-five A. M., about twenty or thirty minutes from the time when he had received his orders.

On their way back to the booth, Alloggio and Wagstaff approached the corner of Avenue D and Rogers avenue, and there saw a police

Ford runabout and close to it a large truck with a wooden body closed at the top and at the sides, the rear being locked and the front being closed. Patrolman Stapleton, one of the petitioner's subordinates, whose conduct he is charged with failure to properly investigate, was beside the truck in conversation with the driver. When Wagstaff and Alloggio reached the point where this conversation was taking place, Wagstaff asked Stapleton what was up and Stapleton replied: " That fellow had no lights, no license." Alloggio inquired if he needed assistance and Stapleton replied that he did not.

Stapleton, nevertheless, directed Wagstaff to get up on the seat of the truck and ride with the driver, and Wagstaff did so, while Alloggio at Wagstaff's request took the wheel of the latter's department Ford. Thereupon the truckdriver, accompanied by Wagstaff, drove the truck around to a point on Thirty-first street between Avenue D and Newkirk avenue. Alloggio, driving Wagstaff's car by a different route, reached the same point and left Wagstaff's car there.

The petitioner says he received the information about the disturbance that he sent Alloggio to investigate from another officer, but that officer says he does not remember having given any such information although he may have done so.

It was while Alloggio was away from the booth that telephone messages were evidently sent by someone which brought the owner of the truck to the point in question where they conferred with the police officers. As a result of this meeting further telephone messages were sent to the police station and the answer received appears to have satisfied all concerned, for nothing further was done to detain the truck or to enforce the law.

In addition, it will be noted that, although the petitioner finished his work at eight o'clock in the morning and usually departed for his home at once, on the day in question he waited until Officer Stapleton returned to the police station after being relieved from duty and the petitioner had a talk with Stapleton.

On this point the petitioner's story was somewhat contradictory. He first said that he was informed by Patrolman Stapleton that he had stopped a truck, but he did not say it was a suspicious truck. At another place he said: " I asked him about the truck he was supposed to have stopped on Avenue D and Rogers Avenue." Having been told about the truck by Patrolman Stapleton, he made no further investigation or effort to learn anything about it.

In addition to the fact that he gave the message which was responsible for taking the police officer away from his booth, he also waited until Patrolman Stapleton, who evidently was in charge

of this whole matter, came back to the police station and reported to him.

Although he knew he was off duty at eight o'clock, he states that he thought he was on duty after that time because a Sergeant Smith was on duty. There was another Sergeant Smith in the precinct, but the petitioner knew from the chart which had been posted for several days, that he was not on reserve duty after the eight o'clock tour. He stayed in the station house until shortly before nine o'clock when he says he discovered his error and left for home. The reason given for petitioner remaining in the police station does not appear to be well founded and the commissioner was warranted in disregarding this testimony.

Petitioner not only failed to make any investigation with reference to the truck but evidently controlled the entire matter from the station house. Stapleton, while he was holding the driver of the truck, said to Wagstaff that he had communicated with the precinct and was waiting for word, the exact language being as follows: " He said he is waiting for word in the station house — he didn't say where, but he is waiting for word and if they don't declare him in they are going in."

Smith, the petitioner, was on the desk at the station house at this time in charge of the telephone and there was one station house only to which they were " going in," unless matters were arranged satisfactorily.

On the evidence the commissioner was warranted in finding that Smith participated in this bootlegging episode and assisted in arranging matters so that these trucks could eventually pass without interference through the section in which the Thirty-fifth precinct is located. There is no doubt that several of these officers knew these trucks were to go through the precinct that night and intercepted them for the purpose of levying tribute, and that Smith at least knew about the whole matter.

The order of certiorari should, therefore, be dismissed and the determination of the commissioner confirmed, with fifty dollars costs and disbursements.

DOWLING, P. J., MERRELL, O'MALLEY and PROSKAUER, JJ., concur.

Order of certiorari dismissed and determination of police commissioner confirmed, with fifty dollars costs and disbursements.